UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
VALERIE KRIMSTOCK, *et. al.*, individually            :
and on behalf of all other persons similarly situated, :
                                                      :
                                                      :
                         Plaintiffs,                  :
                                                      :      99 Civ. 12041 (HB)
         - against -                                  :
                                                      :      <u>OPINION & ORDER</u>
RAYMOND KELLY, in his official capacity as            :
Commissioner of the New York City Police              :
Department, PROPERTY CLERK, New York City             :
Police Department, and THE CITY OF NEW YORK,          :
                                                      :
                         Defendants,                  :
                                                      :
         - and -                                      :
                                                      :
The DISTRICT ATTORNEYS of the City of New York,:
                                                      :
                         Intervenor.                  :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff class in this long-running litigation challenges the constitutionality of the seizure and detention of vehicles by the City of New York. This action was remanded by the Second Circuit to this Court on September 15, 2006 to determine the procedures by which a district attorney may apply to retain, as evidence in a criminal proceeding, a vehicle seized pursuant to a warrantless arrest. See <u>Krimstock v. Kelly</u>, 464 F.3d 246 (2d Cir. 2006) ("<u>Krimstock III</u>").[1]

      The Amended Order of this Court of December 2, 2005 that governs such procedures is again amended, in accordance with the principles articulated by the Second Circuit, and for additional reasons outlined below.

### I.   BACKGROUND

---

[1] The Circuit remanded to this Court the narrow issue of vehicles seized pursuant to a warrantless arrest. It does not appear that the analysis would be different regarding vehicles seized pursuant to a warrant – but that issue is not before this Court.

This action was originally brought in 1999 by plaintiffs who challenged the constitutionality of New York City's civil forfeiture statute as it applied to those whose vehicles were seized pursuant to a warrantless arrest as an "instrumentality of a crime." See Krimstock v. Safir, 2000 U.S. Dist. LEXIS 16444 (S.D.N.Y. Nov. 13, 2000) (Mukasey, C.J.), citing N.Y. CITY ADM. CODE § 14-140.  The Second Circuit, on appeal, held that due process in such situations requires a prompt hearing before a neutral fact-finder to test the probable validity of the deprivation *pendente lite*, including the probable cause for the initial warrantless seizure and the necessity and legitimacy of continued impoundment.  See generally Krimstock v. Kelly, 306 F.3d 40, 69-70 (2d Cir. 2002) ("Krimstock I").  The Circuit directed then-Chief Judge Michael Mukasey to fashion a post-seizure hearing process in accordance with those principles.  Id.

On remand, Judge Mukasey, in an Order finalized on October 24, 2003, fashioned what is now known as a "Krimstock hearing."  The "Krimstock hearing" requires that when a vehicle is seized as an "instrumentality of a crime," the New York Police Department ("NYPD") must give written notice to the claimant of his or her right to a hearing before the City's Office of Administrative Trials and Hearings ("OATH").  The claimant may be either the driver of the vehicle at the time the vehicle is seized or the owner (if different than the driver).[2]  If the claimant requests a hearing, a Krimstock hearing is granted within 10 days of NYPD's receipt of the request.

At that "Krimstock hearing," NYPD has the burden to prove, by a preponderance of the evidence, that a) probable cause existed for the arrest of the vehicle's operator, b) it is likely the City would prevail in an action to forfeit the vehicle, and c) it is necessary that the vehicle remain impounded in order to ensure its availability in the eventual civil forfeiture action.  The Second Circuit affirmed these procedures to the extent they governed vehicles seized as an "instrumentality of a crime."  See Jones v. Kelly, 378 F.3d 198, 204 (2d Cir. 2004) ("Krimstock II").

---

[2] When NYPD seizes a car as an "instrumentality of a crime," the officer gives notice to the driver of his or her right to a "Krimstock hearing" (i.e., the "Krimstock notice," which contains a form by which the driver may request a hearing).  Additionally, NYPD sends a second notice to the owner of the vehicle within five business days.

At this point, however, the related, but distinct, issue had arisen of vehicles concurrently seized as evidence in a pending criminal investigation.³ Upon the City's appeal, the Second Circuit remanded this issue to Judge Mukasey's Court for an evidentiary hearing to determine the potential impact of a post-seizure hearing process for these vehicles on the effective prosecution of criminal cases. See Krimstock II, 378 F.3d 198, 199. After that evidentiary hearing, Judge Mukasey modified his Order to hold that if the District Attorney merely notified the administrative OATH judge that the vehicle in question should be retained as evidence in a criminal proceeding, the "Krimstock" hearing would not go forward. See generally Krimstock v. Kelly, 2005 U.S. Dist. LEXIS 43845 (S.D.N.Y. Dec. 2, 2005). Otherwise, Judge Mukasey generally left his Order unchanged.

Upon Plaintiffs' appeal, the Second Circuit reversed Judge Mukasey. See generally Krimstock v. Kelly, 464 F.3d 246 (2d Cir. 2006) ("Krimstock III"). The Circuit held that under the Fourth Amendment, no adversarial review is required of a District Attorney's decision to retain a vehicle as potential evidence in a criminal proceeding. Krimstock III, 464 F.3d at 252. A District Attorney "must be permitted to seek retention orders *ex parte* so that defendants cannot use the [Krimstock] hearings for discovery or to restrict the prosecution's theories at trial." Id. at 253. Under the Fourteenth Amendment, however, the Circuit held that "although "no adversarial hearing

---

[3] The Krimstock I Court had noted that the parties "appear to agree that plaintiffs' vehicles were not seized as 'arrest evidence' pursuant to N.Y.C. Code § 14-140(b) but rather as instrumentalities of crime[,]" and that "[i]n any event, it is hard to imagine how an arrestee's vehicle could serve as evidence in the ordinary DWI case." Krimstock I, 306 F.3d at 69 n.32. As the Krimstock III Court noted, however, "at the time of the seizure, if the arresting officer identifies the vehicle as possible evidence for the criminal proceeding, the vehicle is labeled 'arrest evidence.'" See Krimstock III, 464 F.3d 246, 248 n.1, citing 38-A New York City Rules & Regulations § 12-31. "If a district attorney subsequently determines that retention of the vehicle is necessary for a criminal prosecution, the vehicle is held as 'trial evidence.'" Id.

Following argument by the parties and the five District Attorneys of New York City regarding vehicles seized as evidence in the related criminal proceeding, Judge Mukasey amended his Order of October 24, 2003 and provided that an OATH judge, upon a showing by the district attorney that the vehicle should be held as evidence for a criminal proceeding, could order continued retention of the vehicle. See generally Krimstock II, 378 F.3d at 200-01. Under that Order, a vehicle release order issued by an OATH judge could be nullified by an order of a Justice of the New York Supreme Court or a Judge of the New York City Criminal Court that designated the vehicle as arrest evidence. See id. at 201. No vehicle could be released unless the driver waived all claims and defenses in the criminal proceeding relating to the condition of the vehicle. See id.

The City and District Attorneys appealed. (The District Attorneys had submitted letters in 2003 as interested non-parties regarding vehicles seized as evidence in a related criminal proceeding. In November 2004, after the Circuit's second remand, the district attorneys officially intervened as parties to this action.)

is required," due process requires "some immediate judicial review" by a neutral fact-finder of the District Attorney's decision to retain a vehicle.[4] Id. at 255. The Circuit noted the "importance of a vehicle to an individual's ability to work and conduct the affairs of life," and the "serious harm" resulting from the "undue retention of a vehicle." Id. The Circuit vacated Judge Mukasey's Amended Order of Dec. 2, 2005, insofar as it allowed District Attorneys to decide unilaterally that a vehicle could be retained as potential evidence, and remanded the matter to the district court.[5] Id. at 248.

Upon remand, Plaintiffs, the NYPD, and the District Attorneys submitted supplemental briefing that proposed potential revisions to Judge Mukasey's Order as it governed vehicles seized as evidence in a pending criminal proceeding.

Plaintiffs also proposed revisions to Judge Mukasey's Order as it governed vehicles seized as an "instrumentality of a crime," in light of evidence Plaintiffs submitted regarding the efficacy of the implementation of those portions of Judge Mukasey's Order.[6] Specifically, Plaintiffs propose that a) the NYPD should bear the initial burden to show proof of service of the Krimstock notice, else the NYPD's petition to retain the vehicle shall be dismissed; b) the Krimstock notice should convey notice of the "innocent owner" defense; c) the NYPD's petition to retain the vehicle should convey greater factual specificity as to the underlying claim; and d) that settlements of Krimstock petitions should be made by a colloquy on the record before the administrative OATH judge. NYPD generally opposes Plaintiffs' proposals.

---

[4] The Krimstock III Court tempered its holding that the Fourth Amendment required no review of a district attorney's decision to retain a vehicle as potential evidence by noting, as Judge Mukasey did, that "probable cause to detain can be ascertained without a full-dress adversarial hearing." Krimstock III at 253.

[5] Shortly thereafter, as Judge Mukasey had left the bench, the matter was reassigned to this Court.

[6] Plaintiffs provided evidence of 30 purported instances from December 29, 2005 through November 18, 2006 in which Krimstock claimants did not receive notice. See Plaintiffs' Memorandum in Support of Supplemental Order…, Dec. 15, 2006 ("Pl. Mem."), Ex. D. NYPD disputes that the 30 instances cited by Legal Aid are legitimate. NYPD represents that out of the 30 instances, five drivers were actually served, eight forms were filled out ambiguously, two were incomplete, and two vehicles were not "vouchered" even though the driver was served, and two vehicles were not "vouchered" thus rendering the form unnecessary. See Messner Decl. ¶ 10; see also Supplemental Declaration of Robert Messner, Jan. 29, 2007, ¶ 2.

Defendants generally aver that given that 2,937 vehicles were designated for forfeiture from January 1, 2006 through December 20, 2006, 30 instances of failed notice constitutes a fairly high success rate. See Declaration of Robert Messner…, Jan. 2, 2006 ("Messner Decl."), ¶ 8.

4

I held a hearing on the record in Chambers on February 1, 2007, at which the parties presented argument.

## II.     STANDARD OF REVIEW

The district court has broad discretion, in an action such as this to remedy due process violations, to fashion a remedy to ensure that the mandate of the Second Circuit is carried out. See Krimstock III, 464 F.3d at 250; Krimstock II, 378 F.3d at 204; Krimstock I, 306 F.3d at 69.

## III.     DISCUSSION

Two sets of issues are presented here on remand. First, as directed by the Second Circuit on remand, I must fashion procedures to govern the District Attorney's retention of vehicles as evidence in a criminal proceeding. Secondly, I will address Plaintiffs's proposed changes to the applicable procedures that govern vehicles seized as an "instrumentality of a crime."

### A. District Attorney's Retention of Vehicles as Evidence in a Criminal Proceeding

#### i. *Ex Parte Application For a Retention Order*

"…[D]istrict attorneys must be permitted to seek retention orders *ex parte* so that defendants cannot use the hearings for discovery or to restrict the prosecution's theories at trial." Krimstock III, 464 F.3d at 253. Although no "adversarial hearing" is required, the prosecutor's decision to retain the vehicle as evidence must be reviewed by a "neutral-fact finder." Id. at 255. Essentially, the District Attorneys argue that whereas a law enforcement officer can approach a judge *ex parte* for a wiretap or search warrant, in an analogous manner, the ADA supervising the case should be permitted to approach a judge *ex parte* for a "retention order" to hold a vehicle as evidence.

Accordingly, the District Attorneys propose, and I agree, that an ADA may approach a Criminal Court Judge or Supreme Court Justice *ex parte* for such a retention order that would allow the District Attorney to hold the vehicle as evidence.[7] That *ex*

---

[7] Regarding the "trigger" that necessitates the DA to apply for a retention order, the DA envisions that the "trigger" would be a Krimstock demand by the claimant. Plaintiffs also envision that a claimant could make a written demand upon the District Attorney and this too would trigger the application.

5

*parte* affirmation should not restrict the prosecutor in any way from making later arguments in the underlying criminal proceeding.

Plaintiffs do not dispute the District Attorneys' right to seek a retention order *ex parte*, so long as the ADA's application for a retention order meets two requirements. First, Plaintiffs propose that the ADA must affirm that there are reasons for the retention, what they are, and that they relate to the contested issue in the underlying criminal proceeding.[8]  Secondly, Plaintiffs propose that the ADA must affirm that no other means besides impoundment (such as more time-limited photographing or forensic testing) will suffice to preserve the evidentiary value of the vehicle.[9]  The District Attorneys do not particularly dispute that such affirmations could be made.  Indeed, the District Attorneys concede that ADA's currently submit an affirmation to hold a vehicle as evidence, and in some situations, ask for more limited retention orders of 30 to 90 days in which to ensure that the photographing or forensic testing is completed.

Accordingly, the ADA's application for a retention order should include an affirmation that meets those two requirements.  The judge will be the ultimate arbiter of whether the application is to be granted, and for how long.  If the judge denies the application, Plaintiffs propose that a copy of the denial be promptly served upon the claimant, and NYPD shall promptly release the vehicle to the claimant.  That proposal is

---

Plaintiffs also propose specifically that once a demand is made, the District Attorney shall respond in writing within seven days of receipt of the written demand.  If the ADA decides that retention of the vehicle as evidence is necessary, the ADA must apply for a retention order to the judge supervising the underlying criminal case.  (It is not entirely clear if, under Plaintiffs' proposed order, the ADA must apply for the retention order within seven days, or within some reasonable time after their seven days to evaluate the demand has elapsed.)  On the other hand, if the ADA decides that retention of the vehicle as evidence is not necessary, the DA shall serve a written statement to that effect upon the claimant.

[8] In the same manner that a law enforcement officer must provide a magistrate with "sufficient information to support an independent judgment that probable cause" exists for a warrant, see Whitely v. Warden, 401 U.S. 560, 564 (1971), Plaintiffs argue that an ADA must provide the judge here with specific information to support that retention as evidence is necessary.  I agree.

[9] Krimstock III noted that courts have "subjected a prosecutor's assertion that evidence is necessary for a criminal investigation to scrutiny for reasonableness," and that the "need for continued retention should be evaluated… in light of less drastic means."  See Krimstock III at 251, citing, e.g., In re Search Warrant for "Premises Known as Encore House," 100 F.R.D. 700, 704 (S.D.N.Y. 1983) (Court held that where Government sought continued retention of checks in mail fraud investigation held as "fruits of a crime," the availability of alternate forfeiture procedures under 39 U.S.C. § 3005 counseled against continued retention).

Here, it appears that in most situations, the District Attorneys' temporary retention of a vehicle to take photographs or conduct forensic testing to be used at trial should satisfy the District Attorneys' legitimate interest in producing evidence.  At risk of stating the obvious, it is unlikely that an Assistant District Attorney might produce the actual vehicle in court to show to the jury.

reasonable.

         ii. *Subsequent Opportunity to Be Heard*

  Plaintiffs propose that if an *ex parte* application for a retention order is granted, the claimant should have a subsequent opportunity to vacate or amend that retention order. The District Attorneys disagree.

  There is a "strong presumption against *ex parte* submissions." United States v. Abuhamra, 389 F.3d 309, 328 (2d Cir. 2004), cited approvingly, Krimstock III at 254 (Court cited Abuhamra for proposition that Mathews v. Eldridge due process test applies in criminal context). "Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." Abuhamra, 389 F.3d 309, 322, citing Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 171 (1951) (Frankfurter, J., concurring). "Fairness of procedure… may not always demand an immediate hearing or one with all the procedural safeguards of a criminal trial, but it does require, at a minimum, that a person 'in jeopardy of serious loss' be given 'notice of the case against him and opportunity to meet it.'" Id. at 322, citing Joint Anti-Fascist Refugee Committee, 341 U.S. at 161, 171-2.[10] Although "the criminal law does permit *ex parte* submissions in support of arrest and search warrants… in those circumstances, the secrecy of supporting affidavits is maintained only briefly, not indefinitely…" Id. at 322 n.8.

  Taken together, these mandates provide that here, although an *ex parte* retention order "must be permitted," such an *ex parte* order is a temporary expedient. See United States v. Monsanto, 924 F.2d 1186, 1193-97 (2d Cir. 1991) (holding that although a restraining order against a criminal defendant's assets may be granted *ex parte* without notice and hearing, due process requires a post-restraint, pre-trial adversarial hearing to address probable cause and the eventual forfeitability of assets), citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Indeed, as the Krimstock III Court noted, the Federal Rules of Criminal Procedure currently provide a procedure by which persons may move for the return of property seized pursuant to an investigation. See Krimstock III at 251, 251 n.6, citing Fed. R. Crim. P. 41(g).

---

[10] See also Marshall v. Jerrico, Inc., 446 U.S. 238 (U.S. 1980) (noting the "two central concerns of procedural due process" – i.e., "the prevention of unjustified or mistaken deprivations," and "the promotion of participation and dialogue by affected individuals in the decisionmaking process."), citing, e.g., Mathews v. Eldridge, 424 U.S. 319, 344 (1976); Joint Anti-Fascist Committee, 341 U.S. 123, 172.

7

The District Attorneys argue that the Second Circuit's statement that "no full-dress adversarial hearing is required" to approve a retention order, see Krimstock III at 253, means that no adversarial hearing is required at any point in time during the pendency of criminal proceedings. The District Attorneys, however, overstate the reach of the Circuit's language. A "full-dress adversarial hearing" refers to the "full panoply of adversary safeguards" – i.e., "counsel, confrontation, cross-examination, and compulsory process for witnesses." Gerstein v. Pugh, 420 U.S. 103, 119 (1975) (holding that these "adversary safeguards" are not required for a criminal determination of probable cause). Although a "full-dress adversarial hearing" is not required to test the District Attorney's initial application to retain the vehicle, given the deprivation of a vehicle here – frequently, the only way in which the claimant can earn a living – claimants must be provided at some point with some opportunity to be heard.[11] Cf. United States v. Monsanto, 924 F.2d 1186, 1193-97 (holding that *Gerstein* does not preclude a later determination of probable cause at an adversarial hearing following an *ex parte* restraining order).

Accordingly, claimants will be provided with the opportunity for a hearing, subsequent to an *ex parte* retention order, wherein they may move to vacate or amend the retention order via a challenge to the legitimacy or necessity of the continued retention of the vehicle as evidence.[12] Following granting of the retention order, the District Attorney shall promptly serve a copy of that order upon the claimant who made the demand. The claimant may then move for a hearing which will be held within 30 days of service of the motion. Service will be by registered or certified mail on the District Attorney and the

---

[11] The District Attorneys aver that because the typical misdemeanor case takes about six months to conclude, and the typical felony case takes one year, that claimants suffer little adverse harm from the deprivation of their vehicle following the *ex parte* retention order. This argument provides little procedural safeguard to those claimants, particularly innocent owners, whose vehicles happen to be seized in a criminal proceeding. See Krimstock III at 254, 255 ("[T]he challenger may be an innocent owner who is no party to the criminal proceeding...")

[12] It appears from Plaintiffs' submissions that Plaintiffs envision that this hearing would take place before the judge in the underlying criminal case. The District Attorneys, on their part, propose that any hearing be held before the administrative OATH judge. It seems strange, however, that an administrative OATH judge might vacate or amend a higher judge's Order, particularly when the judge supervising the underlying criminal case presumably has a better understanding of the necessity for the vehicle as evidence.

criminal defendant (if the defendant is a different person than the claimant).[13]  If the judge vacates the retention order, after the hearing, the NYPD shall, within 30 days, release the vehicle to the claimant, unless continued impoundment is otherwise authorized by law.

As Plaintiffs concede, however, this hearing may not be used to obtain premature or unwarranted discovery for the defendant in the criminal case.  Additionally, so as not to prejudice the District Attorney, the judge overseeing the hearing may condition vacatur or amendment of the retention order on the criminal defendant's waiver of any future claim or defense relating to the condition of the vehicle.[14]

>   IV.   New York City Police Department's Seizure of Vehicles as an "Instrumentality of a Crime"
>
>   >   i.  Plaintiffs' Proposal to Shift Burden to Show Service of Notice Onto NYPD

As noted above, by way of background, when the NYPD seizes a car as an "instrumentality of a crime," the officer gives notice to the driver of his or her right to a "Krimstock hearing" (i.e., the "Krimstock notice," which contains a form for the driver to fill out).  Additionally, NYPD sends a second notice to the owner of the vehicle (who may also be the driver) within five business days.[15]  If the driver (or the claimant) fills out the form and returns it, a Krimstock hearing is granted within 10 days of NYPD's receipt of the Krimstock form.

Plaintiffs have produced evidence that they aver shows "widespread non-compliance" by the NYPD with respect to their obligation to provide notice of Krimstock hearings.  Plaintiffs cite 30 purported examples from late 2004 through late 2006 of drivers who were not given notice.  Because drivers who did not receive notice presumably did not subsequently request a "Krimstock hearing," Legal Aid argues that

---

[13] The District Attorney argues that the claimant's demand for a hearing should be directed to NYPD, rather than the District Attorney.  It seems strange, unnecessary, and potentially dilatory that a motion to vacate an order should not be served upon the agency who initially sought the order.

[14] Indeed, the District Attorneys propose that if the criminal defendant waives any future claims or defenses in the criminal proceeding based on the condition of the vehicle, a Krimstock hearing could go forward.

[15] NYPD notes that when the vehicle is transferred to the impound lot, the impound lot sends out a third notice to the owner and any lien holders.  This impound notice does not give information regarding the Krimstock hearing (although it does give information regarding the reasons for the impoundment of the vehicle, e.g. whether it is "held as arrest evidence," etc.).  See Transcript of February 1, 2007 at 33-34.

9

these 30 instances represent the "tip of the iceberg." NYPD vigorously disputes Plaintiffs' contentions, noting generally that even taking Plaintiffs' allegations as true, 30 occurrences of defective notice out of 2,937 vehicles designated for forfeiture over the course of a year represented isolated instances, rather than systemic failures requiring revision of the existing procedures.[16] NYPD also notes that even if the driver does not receive notice from the arresting officer, the owner receives notice (whether or not the owner is the same person as the driver).[17]

Based on their averments, Plaintiffs propose essentially to shift the initial burden to show service of adequate notice onto NYPD. Plaintiffs propose that at a Krimstock hearing, unless NYPD can show "documentary proof" of timely service of the Krimstock notice, NYPD's petition to retain the vehicle shall be dismissed and the vehicle shall be returned to the claimant.[18] See Plaintiffs' Proposed Order ¶ 3a.  Plaintiffs argue that shifting the burden of proof of service is necessary to incentivize NYPD to provide proper notice.

NYPD correctly avers, however, that lack of service is generally an affirmative defense, upon which the movant bears the burden. Indeed, OATH judges have dismissed NYPD petitions where the claimant credibly argued that he did not receive proper notice. See, e.g., Police Department v. Sica, OATH Index No. 1139/06, at 5 (Jan. 26, 2006) (strictly construing notice requirements against petitioner NYPD). Leaving aside the parties' factual disputes, civil procedure doctrine does not generally provide for shifting the initial burden to show service of notice to the petitioner. Claimants' procedural rights are safeguarded here by their ability to raise a lack of notice defense in a Krimstock hearing. I decline to modify Judge Mukasey's Order on this score.

      ii. *Inclusion of "Innocent Owner" Defense in Initial "Krimstock*

---

[16] Plaintiffs argue that as only about 500 OATH hearings are scheduled each year (out of almost 3,000 vehicles designated for forfeiture), it defies belief that five out of six claimants would give up on the process. NYPD, however, argues that as most claimants are generally the drivers of the vehicle, and thus the defendant in the underlying action, they fail to show for the OATH hearing on advice of their defense counsel.

[17] Legal Aid intimates that because the owner receives a "copy" of the notice given the driver, if the officer does not provide the driver notice, the owner never gets notice either. NYPD disputes this, and represents that the owner gets independent notice. See Declaration of Robert Messner, Jan. 2, 2006 at ¶ 11. Indeed, in any case where a Krimstock hearing judge dismisses NYPD's petition for lack of proper notice, it is usually because the owner received independent notice and challenged the forfeiture. Id. at ¶12.

[18] The vehicle shall not be returned if a retention order is in place. See Plaintiffs' Proposed Order ¶ 3a.

*Hearing" Notice*

Plaintiffs propose that the "Krimstock notice" should also contain notice that the claimant may have an "innocent owner" defense to the forfeiture action. Specifically, Plaintiffs propose language stating that "a vehicle may not be forfeited if its owner did not know or have reason to know that the vehicle would be used in the commission of a crime." See Plaintiffs' Proposed Order ¶ 3; see also Property Clerk v. Pagano, 170 A.D.2d 30, 34 (N.Y. App. Div. 1991) (petitioner seeking forfeiture bears the burden to prove that the vehicle owner "permitted or suffered" illegal use of the vehicle, and in doing so, "knew or should have known that the car would be used as the instrumentality of or in furtherance of a crime."), citing N.Y. CITY ADM. CODE § 14-140.

Citizens are generally charged with constructive knowledge of the law. See Brody v. Vill. of Port Chester, 434 F.3d 121, 130 (2d Cir. 2005) ("property owners are generally charged with knowledge of the laws relating to property ownership"), citing North Laramie Land Co. v. Hoffman, 268 U.S. 276 (1925). That said, I see little harm in modifying the Krimstock notice to provide a short statement to those "innocent owners" whose vehicles may have been used in a crime without their knowledge. The Second Circuit has previously counseled me to give special consideration to the "plight of innocent owners." See Krimstock I, 306 F.3d 40, 58 (noting the "heightened potential for erroneous retention where an arrestee, whether for DWI or some other suspected criminal conduct, is not the owner of the seized vehicle.").

Accordingly, I modify Judge Mukasey's Order so that the Krimstock notice includes Plaintiffs' proposed language regarding the "innocent owner" defense.[19]

      iii. *Specificity of Subsequent NYPD Petition to Retain Vehicle*

Under Judge Mukasey's Order, within two business days of NYPD's receipt of written demand for a Krimstock hearing, NYPD is currently required to send their petition to retain the vehicle to OATH, the claimant, and the applicable ADA informing them of the specific date of the Krimstock hearing. Plaintiffs propose that the NYPD

---

[19] NYPD notes that the New York Court of Appeals is presently considering a factual scenario that relates to the "innocent owner" defense. See Property Clerk v. Harris, 34 A.D.3d 215 (N.Y. App. Div. Nov. 2, 2006) (innocent "co-owner" of vehicle, where other "co-owner" committed underlying crime, not entitled to retain vehicle during pendency of forfeiture proceedings after Krimstock hearing), cert granted, 834 N.Y.S.2d 90 (N.Y. Mar. 29, 2007). If the Court of Appeals changes the underlying New York law regarding the "innocent owner" defense, the Krimstock notice may in the future be modified accordingly.

petition should comply with the City's specificity requirements for an administrative OATH petition. Those requirements are that the petition "shall include a short and plain statement of the matters to be adjudicated, and a reference to the particular sections of the law and rules involved. The petition shall specifically allege the incident, activity, or behavior at issue, and where appropriate, the date, time and place of occurrence. It shall identify the law, rule, regulation, contract provision, or policy that was allegedly violated." OATH Rule 1-22.

Legal Aid argues that currently, without this information, claimants have no factual information prior to the hearing that might enable them to adequately rebut the NYPD's petition to keep their vehicle, such as whether probable cause existed to arrest the driver, or what crime the vehicle was allegedly used as an "instrumentality of." NYPD rebuts that in most cases, where the driver is also the owner of the vehicle, he knows exactly what underlying criminal activity will be discussed at the Krimstock hearing, since the driver (allegedly) committed that activity himself. NYPD's argument, however, does not address the plight of the "innocent owner" who may have no knowledge of the underlying facts he or she is charged to rebut.

Notice is "something more than a mere formality." Taylor v. Rodriguez, 238 F.3d 188, 192 (2d Cir. 2001). I see little reason why the NYPD petition before the OATH tribunal should not comply with that tribunal's administrative rules. I hereby modify Judge Mukasey's Order to provide that the NYPD petition "will comply with the specificity requirements for a petition as stated in OATH Rule 1-22."

> iv. *Necessity of "Colloquy" for Settlements of "Krimstock Hearings"*

Plaintiffs propose that where the claimant and NYPD reach a settlement of the NYPD's petition, such settlement should be accompanied by a determination on the record by the OATH judge to ensure that waiver of a hearing is "knowing and intelligent." Currently, settlement conferences are conducted by a law clerk. Essentially, it appears, Plaintiffs propose a "colloquy" somewhat analogous to the plea colloquy of a criminal defendant.[20]

---

[20] Plaintiffs also propose that "where appropriate, the inquiry shall address the claimant's awareness of the innocent owner defense, as well as [NYPD's] burden to prove that the return of the vehicle to the claimant will present a danger to public safety." Plaintiffs' Proposed Order ¶ 8.

12

As approximately 80% of OATH cases do not result in a written decision, Plaintiffs infer that a substantial percentage of NYPD petitions result in settlement. Plaintiffs aver that the vast majority of claimants before OATH hearings are unrepresented. Thus, Plaintiffs argue, many unrepresented claimants may be forced to pay several hundred dollars to obtain the return of their vehicle when they might have won their OATH hearing if they knew their rights.

NYPD argues that as the majority of claimants are also defendants in the underlying criminal action, those claimants are represented by criminal lawyers, who often advise them to default their OATH hearing for fear of exposing details of their criminal case.[21] NYPD also represents that Krimstock hearings are not intended to be a money-maker for the Department. Although settlements may involve payment of money up to $500 to compensate the City for vehicle storage fees, NYPD represents that settlements are typically made in return for a commitment from the driver that he or she will attend DWI counseling (if the driver is charged with DWI).

More generally, however, NYPD argues that to require a colloquy is to simply micromanage the daily details of an administrative adjudicatory process and impose unnecessary burden upon the process. I agree. At heart, I see no requirement in a civil proceeding such as this for a "plea colloquy" on the record before a settlement is effectuated. I decline to modify Judge Mukasey's order in this fashion.

## V.   CONCLUSION

I direct the Plaintiffs to submit, within seven days of the date of this Opinion, a proposed Order that amends Judge Mukasey's Order of December 2, 2005 in accordance with the aforementioned directives. Defendants may, if they choose, submit a proposed counter-Order of their own within seven days after Plaintiffs' submission. Obviously, it is the Court's hope that the parties will be able to submit a single joint Order.

**SO ORDERED.**
**August 15, 2007**
**New York, New York**

_____
U.S.D.J.

---

[21] NYPD also relates that a private law firm, Latham & Watkins, is planning to provide *pro bono* assistance to unrepresented OATH claimants. Such efforts are commended, and should be encouraged further.

13